IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BRIAN BICKEL                    *
                               *
v.                             *
                               *    Civil Action No. WMN-09-2735
SUNBELT RENTALS, INC.          *
                               *
    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *

## MEMORANDUM

Before the Court is Defendant's Motion for Summary
Judgment.  Paper No. 14.  The motion is fully briefed.  Upon a
review of the motion and the applicable case law, the Court
determines that no hearing is necessary, Local Rule 105.6, and
that the motion must be granted.

Plaintiff Brian Bickel filed this action pursuant to the
Employee Retirement Income Security Act of 1974 (ERISA), 29
U.S.C. § 1001 et seq., seeking a determination that his
employer, Defendant Sunbelt Rentals, Inc., abused its discretion
in refusing to provide coverage for medical expenses he incurred
as a result of a motorcycle accident.  Plaintiff has been
employed by Defendant since September 2004 and, as an employee,
was a participant in Defendant's Employee Benefit Plan (the
Plan).  The Plan is designed and maintained by Defendant to
provide health care benefits to covered employees and dependants
in the event of injury or sickness.

Late in the evening of April 25, 2008, or early the following morning, Plaintiff was involved in a serious motorcycle accident in the state of Ohio.  He was rendered unconscious and transported by ambulance to an area hospital for treatment.  Plaintiff suffered serious injuries in the accident and has incurred almost $70,000 in medical bills which he then submitted to Defendant for coverage of those bills under the Plan.

Under the terms of the Plan, the initial decision to approve or deny coverage for medical claims is made by Primary PhysicianCare, Inc. (PPC), the Plan Supervisor.  Summary Plan Description (SPD) at 59-62.  PPC denied Plaintiff's claim under a provision in the Plan that excludes coverage for "[c]harges for treatment of any injury or illness resulting from: . . . an injury resulting from a motor vehicle accident in which a covered person has a blood alcohol concentration equal to or in excess of the level established by the laws of the state in which the accident occurred for driving while impaired . . . ." SPD at 21.[1]  Defendant denied coverage based upon a toxicology test performed at the hospital following the accident which reported that Plaintiff had a blood alcohol level of 0.201 g/dL. The blood alcohol level for driving while impaired as established by the state of Ohio is 0.08 g/dL.  Thus,

---

[1] A copy of the SPD was submitted as Exhibit A to the Complaint.

Plaintiff's blood alcohol level was more than twice the legal limit.

By letter dated November 18, 2008, Plaintiff, through counsel, appealed the denial of benefits. Compl., Ex. F. In support of his appeal, Plaintiff enclosed a copy of the police report which he states shows that he "was not found to be intoxicated at the scene of the accident." Id. In that letter, he also requested a copy of the toxicology report on which Defendant relied in denying benefits.

PPC responded by letter dated November 24, 2008, enclosing a copy of the toxicology report and reiterating its conclusion that Plaintiff's claims are excluded from coverage because Plaintiff's blood alcohol level exceeded the legal limit in Ohio, the place of the accident. The letter informed Plaintiff of his appeal rights and invited him to submit any additional information or documents that would indicate that the facts relied upon by PPC were incorrect and that the claim is eligible for reimbursement.

By letter to Defendant dated February 3, 2009, again through counsel, Plaintiff submitted his formal appeal of PPC's decision. Contending that the decision "relied upon Ohio law," Plaintiff argued that under well established Ohio law, "an insurer must be able to demonstrate not only that the insured was legally intoxicated at the time of the accident, but also

that the insured's intoxication was the proximate cause of the accident, even if the policy term itself does not contain such a 'causation' requirement." Compl., Ex. E.[2]

Defendant denied Plaintiff's appeal, explaining that the decision did not rely on Ohio state law but relied solely on the interpretation of the terms of the Plan. Compl., Ex. D. As required under the terms of the Plan, Defendant looked to Ohio law only for the purpose of determining the appropriate benchmark to apply to the blood alcohol concentration of Plaintiff during the accident. Id. The letter further informed Plaintiff that he could bring a civil action if he was not satisfied with the decision.

Plaintiff filed suit here on October 21, 2009. The parties engaged in some limited discovery although both now agree that this Court's review must be limited to the evidence before the Plan Administrator at the time of its decision. Opp'n at 4-5; Reply at 2. n.1 (asserting that the additional evidence submitted with Defendant's motion that had not been before the Plan Administrator was only submitted "to provide the Court with a narrative history"). Defendant has now moved for summary judgment asserting that, under the applicable standard for review of decisions made by employee benefit plans, the Court

---

[2] Exhibit E to the Complaint included both Plaintiff's November 18, 2008, and February 3, 2009, letters.

must defer to Defendant's determination that Plaintiff's claims are subject to the above-quoted exclusion and must enter judgment accordingly.

In ERISA cases, when a benefits plan confers to the administrator the discretionary authority to determine benefit claims and appeals, courts will review those determinations under an "abuse of discretion" standard.  <u>Metro. Life Ins. Co. v. Glenn</u>, 128 S.Ct. 2343, 2348 (2008); <u>Firestone Tire & Rubber Co v. Bruch</u>, 489 U.S. 101 (1989).[3]  Here, the SPD provides in pertinent part that

> [t]he Plan Administrator[4] is required to administer this Plan in accordance with its terms and has the authority to establish policies and procedures for the management and operation of the Plan.  It is the express intent of this Plan that <u>the Plan Administrator shall have sole and complete discretionary authority to construe and interpret the terms and provisions of the Plan, to decide issues regarding eligibility and benefits due under the Plan, and to make all determinations, including factual determinations, arising under the Plan</u>.  Except as otherwise required by law, the decisions of the Plan Administrator will be final and binding for all interested parties.

---

[3] Plaintiff acknowledges that the "abuse of discretion" standard is the appropriate standard of review in this action but adds that "[a]ny ambiguity which may exist in the language of the Plan must be construed against [Defendant,] the drafter of the Plan."  Opp'n at 3 (citing <u>Doe v. Group Hospitalization & Med. Servs.</u>, 3 F.3d 80, 89 (4th Cir. 1993)).  The Supreme Court's decision in <u>Glenn</u>, however, abrogated the Fourth Circuit's rule whereby ambiguities were construed against the drafter.  <u>Carden v. Aetna Life Ins. Co.</u>, 559 F.3d 256, 260 (4th Cir. 2009).

[4] Defendant is both the Plan Sponsor and the Plan Administrator.

SPD at 66 (emphasis added).

Pursuant to the "abuse of discretion" standard, an administrator's decision will be upheld if it is reasonable, even if the reviewing court would have reached a different conclusion based on the same set of facts and policy language. White v. Eaton Corp. Short Term Disability Plan, 308 F. App'x 713, 716 (4th Cir. 2009); Bernstein v. CapitalCare, Inc., 70 F.3d 783, 787 (4th Cir. 1995). For a decision to be reasonable, it must follow a "full and fair review" and be "the result of a deliberate, principled reasoning process" that is "supported by substantial evidence." 29 U.S.C. § 1332(a); See also Stup v. UNUM Life Ins. Co. of Am., 390 F.3d 301, 307 (4th Cir. 2004).

Courts examine the reasonableness of a decision by looking to several non-exclusive factors, including:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decision-making process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

Booth v. Wal-Mart Stores, Inc. Assocs. Health and Welfare Plan, 201 F.3d 335, 342-43 (4th Cir. 2000). Moreover, the phrase "substantial evidence" refers to evidence that "consists of less

than a preponderance but more than a scintilla of relevant evidence that 'a reasoning mind would accept as sufficient to support a particular conclusion.'" Whitley v. Hartford Life & Accident. Ins. Co., 262 F. App'x 546, 551 (4th Cir. 2008) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Put differently, "[i]f there is evidence to justify a refusal to direct a verdict were the case before the jury, then there is 'substantial evidence.'" Celebrezze, 368 F.2d at 642.

With regard to the final element of the reasonableness test announced in Booth, a conflict of interest exists where, as here, an employer or benefit plan serves the dual role of determining eligibility for benefits and actually paying the benefits. Glenn, 128 S.Ct. at 2346. A conflict of interest, however, does not operate to reduce the deference given to a fiduciary's discretionary decision to deny benefits. Rather, it is weighed as "but one among many factors in determining the reasonableness of the Plan's discretionary determination." Champion v. Black & Decker (U.S.) Inc., 550 F.3d 353, 359 (4th Cir. 2008).

The Court finds Defendant's denial of coverage for claims arising out of the motorcycle accident to be reasonable and supported by substantial evidence. The language of the SPD is clear and unambiguous; coverage for treatment of injuries resulting from a motor vehicle accident will be denied if the

covered person had a blood alcohol level that meets or exceeds the legal limit as established by the state in which the accident occurred. The toxicology report indicated that Plaintiff's blood alcohol level shortly after the accident was more than twice the legal limit and it is certainly reasonable to conclude that his blood alcohol level was not any lower at the time of the accident. Although invited to do so, Plaintiff failed to provide any information or documents that undermine the validity or reliability of the toxicology report.

The only document submitted by Plaintiff was the report of the police officer investigating the accident. Plaintiff asserts that the officer found that "Plaintiff was not under the influence of alcohol at the time of the Accident," noting that, in answer to a multiple choice form question as to Plaintiff's "Alcohol Test Status," the officer indicated "None" where he could have indicated "Unknown" or "Suspected." Opp'n at 10. Plaintiff ignores, however, the immediately preceding question, "Alcohol/Drug Suspected," for which the officer did indicate "Unknown." Police Report at 2. The report provides no evidence that Plaintiff was "not under the influence," it is simply consistent with the conclusion that Plaintiff was critically injured, perhaps unconscious, so that the officer did not make any determination whatsoever as to Plaintiff's state of intoxication nor did he decide to test for intoxication.

Although Plaintiff does not appear to have raised this argument prior to Defendant making its final determination, Plaintiff now challenges the bona fides of the toxicology report, noting that it states that its "results are for medical treatment only," and that its "analysis [was] performed using non-forensic procedures." Pl.'s Ex. A at 2. It was reasonable, however, for Defendant to conclude that a test conducted for the purpose of medical treatment was designed to be accurate and Plaintiff provided nothing to undermine that conclusion. It would be highly unreasonable to conclude that the test was so inaccurate as to report Plaintiff's blood alcohol level as more than twice the legal limit if it was, in fact, under the legal limit. Nothing in the record supports that conclusion.

Plaintiff's primary argument here as well as when his claim was before Defendant is that "[u]nder well-established Ohio law, Defendant had the burden to prove not only that Plaintiff had an illegal [blood alcohol content] level at the time of the Accident, but also that Plaintiff's alleged [blood alcohol content] level was the proximate cause of the Accident, despite the fact that the Plan itself does not contain such a 'causation' requirement." Opp'n at 7. This argument, of course, is premised on Plaintiff's contention that "Defendant relied upon Ohio state law in making its eligibility

determinations under the Plan." Opp'n at 6 (emphasis in original). This argument is flawed for at least two reasons.

First and foremost, Defendant did not rely on Ohio law but simply applied the plain language of the Plan. The Plan required reference to Ohio law, but solely to obtain a benchmark blood alcohol level. While the Plan could have tied ineligibility for benefits to a determination that the participant was "driving under the influence of alcohol" under the law of the state in which the accident occurred, or to a finding that the accident was caused by the participant's intoxication, or to some other criteria, it did not do so. Furthermore, the Court notes that Defendant unquestionably had the authority to frame its exclusion under the terms that it did. See Sutton v. Hearth & Home Distrib., Inc., 881 F. Supp 210, 216 (D. Md. 1995) (noting that "ERISA does not regulate the substantive content of welfare benefit plans"); Chmiel v. JC Penney Life Ins. Co., 138 F.3d 966, 969 (7th Cir. 1998) (finding that an exclusion in an accidental death policy based upon blood alcohol level was enforceable).

It is true, as Plaintiff suggests, that there are some circumstances where courts are permitted to look to state law to shape a body of federal common law of rights and obligations under ERISA-regulated plans. Firestone Tire, 489 U.S. at 110. It is also true, however, that federal common law cannot be used

when "its application would conflict with the statutory
provisions of ERISA ... or [would] threaten to override the
explicit terms of an established ERISA benefit plan." <u>Singer v.
Black & Decker Corp.</u>, 964 F.2d 1449, 1452 (4th Cir. 1992).  <u>See
also</u>, <u>Coleman v. Nationwide Life Ins. Co.</u>, 969 F.2d 54, 59-60
(4th Cir. 1992).  While ERISA's express provisions can be
supplemented when gaps exist in the language, when the purposes
of the ERISA plan are written, unambiguous, and bargained-for,
application of federal common law is inappropriate because the
terms of the plan should be enforced.  <u>United McGill Corp. v.
Stinnett</u>, 154 F.3d 168, 173 (4th Cir. 1998).  Under the facts
presented here, adding a causation element to the exclusion
would be an impermissible modification to the Plan.  <u>See</u> <u>Chmiel</u>,
158 F.3d at 969 (refusing to imply a causation element in a
similarly worded exclusion in an accidental death policy).[5]

Regardless, even if there had been a causation requirement
in the exclusion, that requirement would be met here.  The
police report concerning the accident indicates that the road
conditions on the night of the accident were dry and identified

_____

[5] The court in <u>Chmiel</u> did opine that in circumstances "where no
conceivable causal connection exists between the decedent's
blood-alcohol level and his death, the exclusion should not be
enforced."  158 F.3d at 969.  The court also observed, however,
that "under such an approach, the burden of disproving any
causal connection would fall on the beneficiary."  <u>Id.</u>  As
explained, <u>infra</u>, Plaintiff could not meet that burden.

no other adverse conditions.[6]  The officer identified the cause

of the accident as Plaintiff's failure to negotiate the roadway

and to maintain a safe distance from the motorcycle he was

following, driving behavior that is certainly consistent with a

state of intoxication.  See <u>Eckelberry v. Reliastar Life Ins.</u>

<u>Co.</u>, 469 F.3d 340, 345 (4th Cir. 2006) (noting the "typical

effects of blood-alcohol concentration of 1.5 percent included

blurred vision, loss of motor coordination and impaired

judgment") (internal quotations omitted).

For these reasons, the Court finds that Defendant's denial

of coverage was not an abuse of discretion and, accordingly,

Defendant is entitled to judgment.  A separate order will issue.


_____/s/_____
William M. Nickerson
Senior United States District Judge


DATED: October 6, 2010

------

[6] Plaintiff stated in his answers to interrogatories and in his
deposition that the accident was caused by a wet road surface
and loose gravel.  Pl's Ans. to Interrog. #5; Pl's Dep. at 109-
10.  Defendant also states that Plaintiff presented this
assertion to Defendant to support his request for coverage,
Reply at 1, although it is not clear from the record whether he
offered this explanation prior to discovery in this action.
Assuming, however, that he did, Defendant's decision to credit
the police report over Plaintiff's version would have been
reasonable and the police report is substantial evidence of the
lack of an alternative cause.